UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BENTON & CENTENO, LLP,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:19-CV-01317-RDP |
| **THOMAS M. CLARKE, et al.,** | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This matter is before the court on the Motion for Default Judgment, filed by Plaintiff Benton & Centeno, LLP, ("Plaintiff") on November 8, 2019, against Defendants Thomas M. Clarke and Ana M. Clarke (collectively "Defendants"). (Doc. # 11). On October 31, 2019, the Clerk recorded an Entry of Default against Defendants. (Doc. # 210). Plaintiff now seeks a Rule 55(b) default judgment for the monetary relief sought in the Complaint (Doc. # 1), an award totaling $105,627.36. (Doc. # 11). For the reasons discussed below, the Motion (Doc. # 11) is due to be granted.

**I. Background**

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)). Plaintiff has alleged the following facts in its complaint, and these facts are deemed admitted based upon Defendants' default in this case. Benton & Centeno, LLP is a law firm based in Birmingham, Alabama. (Doc. # 1 at 1). Defendants Thomas M. Clarke and Ana M. Clarke are a married couple who live in Roanoke, Virginia. (*Id.*). On November 16, 2018,

1

Defendants retained Plaintiff to perform legal services on their behalf with respect to the Mission Coal bankruptcy case, then pending in the United States Bankruptcy Court for the Northern District of Alabama. (*Id.* at 2). The agreement was memorialized in an engagement letter. (Doc. # 11, Exh. B at 46–49). In the engagement letter, the parties agreed that Plaintiff would be paid an agreed-upon hourly rate and would be reimbursed for litigation expenses. (Doc. # 1 at 2). Additionally, the engagement letter specified that Defendants would pay interest on invoices if they were not paid in full within thirty days. (*Id*; Doc. # 11, Exh. B at 48).

After the engagement letter was executed, the representation of Defendants was subsequently enlarged to include handling matters for numerous entities owned in whole or in part by Thomas Clarke and/or Ana Clarke, all related to the pending Mission Coal bankruptcy case. (Doc. # 1 at 2). Plaintiff performed the agreed upon legal services on behalf of Defendants. (*Id.*).

Plaintiff filed its Complaint on August 15, 2019. (Doc. # 1). On October 3, 2019, the Summons and Complaint were served on Defendants. As reflected in the proof of service submitted on October 9, 2019. (Docs. # 4, 5). Both Defendants failed to submit an Answer by October 27, 2019. Not only have Defendants failed to answer, they have not sought additional time to respond or made an appearance in the case. Plaintiff moved for Entry of Default against both Defendants on October 29, 2019. (Docs. # 6, 7). The Clerk of Court entered default against Defendants on October 31, 2019. (Doc. # 10). Subsequently, Plaintiff filed a Motion for Default Judgment and is seeking $105,627.36 in damages (Doc. # 11 at 4). According to Plaintiff, Defendants owe $50,631.80 in fees, $51,971.88 in litigation expenses,[1] and $3,023.68 for interest through July 2019.[2]

---

[1] A copy of the Statement of Account and Invoices is attached to Plaintiff's Motion for Default. (Doc. # 11, Exh. A).

[2] The process for the calculation of interest on outstanding expenses owed is described in the Engagement Letter. (Doc. # 11, Exh. B).

## II. Analysis

Rule 55(b) states in relevant part:

> (b) **Entering a Default Judgment.**
>
> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> **(A)** conduct an accounting;
>
> **(B)** determine the amount of damages;
>
> **(C)** establish the truth of any allegation by evidence; or
>
> **(D)** investigate any other matter.

FED. R. CIV. P. 55(b)(1)–(2). If the defendant is not an infant or an incompetent person, the court may enter a default judgment against the defendant because of the defendant's failure to appear or defend. *Id.* at Rule 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Id.* at Rule 54(c). Although this court permits the Clerk of Court to enter default when appropriate pursuant to Rule 55(a),[3] it is the practice of judges of this court to reserve all decisions about the entry of a Rule 55(b) default judgment for the discretion of

---

[3] Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

the particular judge to which the case is assigned, even when Rule 55(b)(1) permits the court to enter a default judgment because plaintiff's claim against the defendant is for a sum certain or for a sum which can by computation be made certain. Thus, Plaintiff's Motion for Default Judgment (Doc. # 11) in this case is properly before the undersigned.

The court finds the requirements of Rule 55(b)(2) are satisfied in this case. Defendants were served with the Summons and Complaint on October 3, 2019. (Docs. # 4, 5). Defendants failed to timely plead, answer, or otherwise defend as required. (*Id.*). Default was entered by the Clerk of Court on October 31, 2019. (Doc. # 10).

The case law is clear that a judgment by default may only be entered without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *United States Artist Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) (citations omitted). Damages may be awarded if the record adequately reflects the basis for such an award through a hearing or demonstration by detailed affidavits establishing the facts.*" Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citations omitted.) Along with its current Motion, Plaintiff has provided the court with an affidavit and supporting documentation that establish the necessary facts regarding the amount due and owing under the Engagement Letter. (*See* Docs. # 1, 6, 7, 11).

However, as Plaintiff seeks an award of attorney's fees and costs, the court must determine whether the requested fees and costs are reasonable. Alabama law allows a party to recover attorney's fees as damages if such fees are provided for by statute, contract, or special equity. *Jones v. Regions Bank*, 25 So. 3d 427, 441 (Ala. 2009). Alabama courts apply twelve criteria when analyzing the reasonableness of an attorney's fee:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the

professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988).

To confirm the reasonableness of its request for attorney's fees and costs in this case, Plaintiff has provided the court with an affidavit and supporting documentation indicating the hours billed by Plaintiff. (Doc. # 11 at 3–4; Exh. A, B). Exhibit A includes a summary of the hours billed by Plaintiff and invoices representing litigation expenses. (Doc. # 11, Exh. A at 7–45). A copy of the Engagement Letter is included as Exhibit B. (Doc. # 11, Exh. B at 46–49).

After reviewing Plaintiff's Motion, affidavit, and exhibits, the court set a hearing to discuss two items: (1) the Xact Data litigation expenses; and (2) the Plaintiff's billing statement. Notice was given to all parties; however, only Plaintiff attended the hearing.[4] First, the court asked Plaintiff to clarify the relationship between Plaintiff, Defendant, and Xact Data. According to Plaintiff, Xact Data is a third-party document storage and review system that Defendants requested Plaintiff to use for discovery in the Mission coal bankruptcy proceedings. Further, Plaintiff represented that it paid $51,971.88 to the vendor for the use of Xact Data services, and did so on behalf of Defendants to pay for litigation support services in the bankruptcy action. Although this amount was paid by Plaintiff, the firm has not been reimbursed.

Second, the court asked Plaintiff about the following entries on the billing statement:

- February 1, 2019: 28.60 hours
- February 22, 2019: 33.70 hours
- March 1, 2019: 45.30

---

[4] As Defendants have not made an appearance personally or through a representative, seven-day notice was not required. FED. R. CIV. P. 55(b). However, the court did post a notification of the hearing on the CM/ECF system on November 14, 2019. (Doc. # 14).

5

- March 8, 2019: 51.60 hours
- March 18, 2019: 45.70 hours
- March 22, 2019: 46.80
- April 1, 2019: 44.90 hours
- April 5, 2019: 43.30 hours
- April 10, 2019 29.20 hours

(Doc. # 11; Exh. A). On the billing statement, each of the above entries is coded under the initials "PPH" and each daily entry exceeds twenty-four (24) hours. (*Id.*). Plaintiff represented the initials "PPH" are the initials of his office manager, and each of the entries at issue represent a weekly culmination of hours for two document review employees. Plaintiff stated that because the document review employees were only law school grads, and not members of the Alabama bar, the law firm's internal software did not allow them to input their own time. Therefore, Plaintiff's office manager collected their time on a weekly basis and put it into the system using her own initials.

To support this representation, Plaintiff submitted an additional billing statement that reflects the hours billed by the document review employees. (Doc. # 15). Regarding fee reasonableness, the court questioned Plaintiff on the fees charged for the work of the document review employees. Plaintiff stated they charged $30.00 per hour, per employee. At the conclusion of the hearing, Plaintiff, as an officer of the court, again represented that the hours billed under the initials "PPH" reflect the culmination of hours in a billing period (a full week) for two document review employees and are not inflated billings.

After considering Plaintiff's efforts in the Mission Coal bankruptcy, as well as the money expended by Plaintiff on Xact Data (at Defendants' direction), the court finds that the litigation expenses requested by Plaintiff are reasonable. Further, because of the expertise required in this case, the rates customarily charged, and time spent on this case, the court finds that the attorney's fees and costs requested by Plaintiff are reasonable.

Therefore, Plaintiff is entitled to an award of $50,631.80 in attorneys fees, $51,971.88 for litigation expenses, and $3,023.68 in unpaid interest, for a total amount due of $105,627.36. (Doc. # 1 at 2).

**III.    Conclusion**

For the reasons above, Plaintiff's Motion for Default Judgment (Doc. # 11) is due to be granted. The court will award Plaintiff $105, 627.36, along with post-judgment interest. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 21, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE